OF THE

## STATE OF LOUISIANA.

EASTERN DISTRICT, JUNE TERM, 1825.

3NS622
48 1258

3 N S 622
110 870

FLOOD & AL.
*vs.*
SHAMBURGH.

## *FLOOD & AL* vs. *SHAMBURGH.*

APPEAL from the court of the first district.

Where the the rules of court do not require a replication, all means of defence are left open to the plaintiff.

The widow who accepts the community, may be sued in the district court.

The wife who has taken an active part in the community, or has not made an inventory, cannot renounce.

What is full value *in money* for a note,

PORTER, J. delivered the opinion of the court. The petitioners state that in the beginning of the year 1823, the late William Flood being in want of money applied to defendant for various sums, which were lent him and which he repaid with usurious interest; that among other transactions he gave his note to defendant on the 6th of January, 1823, for $10,000, on an usurious loan, and made a mortgage without any consideration for the same sum of $10,000. That the defendant has frequently and publicly declared, that the estate of Flood was in-

debted to him in both the amount of the note and the mortgage, and that he would institute suit on both, and claim the sum of $20,000 with interest and costs.

FLOOD & AL.
vs.
SHAMBURGH.

is a question of law.

Usury may be committed by agreeing to take the legal rate of interest, on a larger sum than that really lent.

They further state that by reason of these allegations they have been hindered from sel_ling, and disposing of the estate, or settling the demands against it. That they have frequently and amicably requested the defendant to pre-sent his claim, which he refuses to do, but con-tinues to boast of his demands, and prevents the petitioners paying one James Erwin who is a creditor of the estate.

The prayers of the petition are:

That the defendant may be ordered to set forth distinctly the nature of his claims against the estate of Flood.

That he may be ordered to institute suit thereon within ten days from the service here-of, or on making default, that it may be declared the estate is not indebted to him.

That the mortgage may be declared null and void.

That the defendant may be condemned to pay the petitioners the sum of of $24,000 for his unjust boasting.

That he may be condemned to refund and

pay $2,000 received by him for usurious interest, between the 1st of January, 1815, and the 1st of January, 1824.

That he may set forth in his answer all the circumstances attending his transactions with the deceased.

The answer denies, that the defendant did ever jactitate, or boast, he had a claim against the estate of William Flood for $20,000, or that he had refused or delayed to bring his suit on the note due him, or in any manner impeded the settlement of the estate; but that on the contrary, he and one James Erwin filed a petition in the court of probates, praying to be paid the amount really due; and afterwards filed another to the like effect against the widow as curatrix of the minor children. That these proceedings were stopped in conseqence of an agreement made with the executors, that they would deliver notes received for the sale of property of the estate, which agreement they have failed to comply with. Judgment is therefore prayed by way of reconvention, for the sum of $10,000 with interest and costs.

The answer proceeds to deny that the consideration of the note and mortgage is, or was usurious, or that the deceased paid him ille-

gal interest, between January, 1815, and 1824.

That the note was given for money loaned to Wm. Flood in his life time at a year's credit, and that the mortgage was given to secure the same. It concludes by praying judgment against Mary Flood who has accepted the community, and against the minor heirs.

The cause was submitted to a jury on special facts; upon their finding the court below gave judgment in reconvention against the plaintiff, for $8,800, with interest at ten per cent. from the 6th of January, 1824, until paid and costs of suit. The defendant appealed, and the plaintiffs have prayed the judgment should be amended in their favor.

The first question necessary to be decided is, the legality of the judgment in reconvention in reference to the plaintiffs, who are minors, and who have necessarily accepted the succession with the benefit of an inventory. As neither the rules of the court in which this case was tried, nor the law, require a replication to the answer. it is consequently open to every objection which could have been *pleaded* to it. Now it is clear that an ordinary action could not be maintained in the district court against minor heirs, who administer a succes-

East'n. District.
*June* 1825.

FLOUD & AL.
· *vs.*
SHAMBURGH.

sion through the agency of their tutors or cura‑ tors, for debts due by that succession; at least not unless it was shewn the estate had been settled according to law, and that a partition had taken place between the heirs. This principle admitted, the only thing left for inquiry in this case is, whether the jurisdiction can be acquired, by the plaintiffs having drawn the defendant before that tribunal. We are very clear it cannot. They could only bring the defendant there, for the examination of matters of which the court could take cognizance,

This view of the subject leads us to an ex‑ amination of the correctness of the course pur‑ sued by the plaintiffs in instituting this action. The petition as we have seen, embraces seve‑ ral matters, some of which we conceive were properly cognizable by the district court, and others were not. In the first we include the claim to recover back illegal interest paid on other considerations, than the money now claimed by defendant from the estate. We al‑ so include the demand in damages, for setting up false and injurious pretentions against the succession. These could be fairly brought before the district court, because they were separate and distinct demands by the estate

against the defendant, who was not suable before the court of probates.

But that part of the petition which after acknowledging a debt due, calls on the defendant to state its nature and amount, we consider irregular and contrary to law; as we do all the proceedings which were predicated on it. We can see no object in such an investigation. The district court could not regularly execute its judgment, for the assent, and order of the judge of probates would still be necessary to enable the plaintiff in reconvention to execute it. The whole proceeding supposes jurisdiction in the district court for the purpose of enquiry alone, and for this purpose we have said that court does not possess it. This point received a particular examination in the case of *Vignaud* vs. *Tonnacourt's curator*, 12 *Martin*, 234. See also *Civ. Code,* 178, *art.* 137,

Our law has affixed a sufficient penalty on creditors, who do not present their claims against a succession administered under an inventory, to suppose they will delay bringing them forward before the proper tribunal. It is time enough when they present them, to offer those exceptions which will reduce their claim, and it is mere wantoness to drag them before

FLOOD & AL.
*vs.*
SHAMBURGH.

an other tribunal, in order to investigate matters which could more properly be offered as an exception to their demand, when they came before that court, which alone has the means, and the power to terminate the matters in contestation. What is conclusive against the regularity of the course of proceeding resorted to in this instance is, that notwithstanding all the litigation in this action, the defendant might, on going to the court of probates with his judgment, be compelled to discuss again, with the other creditors, all the matters and things at issue in this suit. *Novissima Recop. lib.* 11, *tit.* 28, *ley* 3

Confining out attention then to the verdict on those matters of which the court could take cognizance, we find the jury have expressly negatived the fact of the defendant having received usurious interest on the loans of money other than that for which the note still due, was given; and, they have also found, the defendant never did set up such a claim as is charged in the petition. There must be final judgment therefore against the plaintiffs on both these demands.

But there is still another and important question open, and that is whether the judgment in

reconvention against the widow, must not be affirmed.

Its correctness, independent of the matters which are peculiar to the present case, depends on the extent of her responsibility on accepting the community. If in doing so, her liability for one half of the debts, depend on whether the amount received by her from the community equals the moiety of the sums due by it: or in other words, if she take under the benefit of an inventory, then claims against her must be presented in the court of probates; for she is nothing more than administrator of the estate, and it is right, that all the creditors should have an opportunity of presenting their claims, and getting a proportion of the common fund left for the payment of debts. If on the contrary, by the act of acceptance, she becomes responsible *personally* for the one half of the debts, she may be sued any where.

In the investigation of this subject, finding the provisions of our code not so clear and explicit as could be desired, we turned to the ancient law of the country. It has afforded us, however, but little assistance. There existed no legislative enactment in Spain on the matter, and the authors who have written on this

FLOOD & AL.
*vs.*
SHAMBURGH.

branch of her jurisprudence differ in opinion: the better one perhaps, was, that after accepting, she could not renounce, on discovering the effects of the community, not to be equal to one half of the debts due by it. *Febrero, p.* 2, *tit.* 1, *cap.* 4. § 3, *nos.* 71 *and* 72.

Our code has so far altered the law, as to give the widow the right of renouncing at any time, *Civ. Code,* 338, *art.* 78. But in order to enjoy the privilege she must not have taken an active concern in the affairs of the community, and she must have made an inventory. If she has done the one, or fails to do the other, she cannot renounce; and in those cases where she cannot, we are of opinion she is responsible for the one half of the debts; whether the one half of the property of the community be equal to them or not. We found this opinion on two articles of our code; one of which declares, that in the partition of the effects of the partnership of community of acquests and gains, both husband and wife are to be *equally liable* for their share of the debts contracted during marriage: the other provides, the wife and her heirs *may exonerate themselves* from the debts, by renouncing. If she be equally liable with the husband, and only one mode is pointed out by

which she can escape that responsibility, she is clearly responsible in her own right, unless that mode has been pursued.

It has not escaped our attention, that the heirs of the husband could free themselves from personal responsibility by accepting the succession with the benefit of an inventory; and that it may be urged, this opinion makes the wife incur a heavier responsibility. But the difference is rather in the means, than in the end. Inventory, and acceptance under it, are sufficient to enable the heirs to escape responsibility in their personal capacity. Inventory and renunciation are both required to enable the wife to enjoy the same privilege; and if both be made, they have the further effect of freeing her from the trouble of administering the estate.

We are greatly strengthened in this opinion from an examination of the Napoleon Code. That body of law formed as it is well known the *substratum* of the civil code of this state, and so many of its provisions were incorporated *verbatim* into ours, that whenever we find several of its regulations adopted on a particular subject, and a material one omitted, we may safely conclude, that omission proceeded from a difference of opinion in the framers. Now by

the 1483d article of that code, the wife is only responsible to the amount of the inventory, and renunciation is not necessary, to protect her from being answerable in her own right.

In this case the widow accepts the community by bringing suit to have part of its effects adjudged to her. Nothing appears on the record which shows a renunciation, or a right to make it. She is therefore responsible in her personal capacity for one half of the debts of the succession, and was properly sued in the district court.

It only remains to enquire for what sum judgment should be given against her. It has been contended the case is not in a situation for final judgment in consequence of the contradictory finding of the jury, on the first and fourth facts submitted by plaintiffs. The apparent discrepancy which the verdict exhibits on these facts, is removed by an examination of the pleadings, and the issue joined. The first is evidently in relation to the demand for illegal interest already paid. The second refers to the contract sued on.

The jury have found the defendant gave $8,800, for a note of the plaintiff's ancestor, payable in one year for $10,000. In answer to

the 8th fact submitted on the part of the defendant, they state he "gave the full value for the note." What sum of money is *full value* for a note of the borrower payable at a future day, is a question of law not of fact; as the law has declared that not more than a certain sum shall be taken for the loan. This part of the the verdict therefore, cannot be permitted to influence the judgment of the court.

The strongest objection against the finding of the jury, as not sustaining the plea of usury, was, that it only states *what money* was given for the note, and *non constat* there might not have been *money and other property* given for it. This argument would have considerable weight, were it not for the judicial confession of the defendant in his answer, "that the note was given *for money loaned,* to William Flood, at a year's credit."

We consider then the fact to be clearly established that the note for $10,000, payable in one year, was given for $8,800. The judge below thought this agreement was usurious, and that under it no more than the original sum lent could be recovered. But he was of opinion that, as by a subsequent act of mortgage passed to secure the payment of this note,

VOL. III. (N. S.) 80

the borrower had stipulated to pay interest at ten per cent. if it was not regularly discharged at the end of the year; that rate of interest could be recovered on the sum really lent, from the date of the failure to comply with the original contract.

We agree with the judge, in the conclusion to which he came on the first agreement, and are unable to concur with him in regard to the second. Both contracts appear to us equally usurious. The first was to get twelve per cent. on the loan of $8,800, for one year; and the second was to receive ten per cent. on a sum made up in part of this usurious interest. Now whether the law be violated by taking a promise to pay fifteen per cent. on the loan of $1000 for one year; or by an engagement, the borrower shall pay ten per cent. on $1,500, when only $1000 are lent, the consequence must be the same. For there is no difference between the two cases just put, except in the mode chosen, to avoid the prohibition to take more than legal interest on money lent. The law has not been so improvident, as such an argument supposes. It annuls all *"contratos simulados en fraude de usuras."* To know whether a contract comes within the provisions of this

law, we have only to enquire how much money
was lent; and how much was to be paid for the use of it. If the latter exceed the rate of in-
terest which the law permits, it is a matter of no consequence how, or in what manner the promise was made, or what consideration is *avowed* for it. *Novissima Recop. lib.* 10, *tit.* 1, *ley.* 20.

It is therefore ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed. And proceeding to give such judgment here, as in our opinion should have been given in that court. It is ordered, decreed and adjudged, that there be judgment against the plaintiffs on the matters and things claimed by them in their petition, saving to the minor heirs in the court of probates any exception they may have to the claim of defendant for moneys lent to their ancestor William Flood. And it is further ordered and decreed, that the defendant in this cause, and plaintiff in the demand in reconvention, do recover of Mary Flood, the sum of four thousand four hundred dollars, with costs in both courts.

*Hoffman* for the plaintiff, *Hennen* for the defendant.